# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

DEEP SEA FINANCING, LLC,  \*
　　　　　　　　　　　　　　\*
　　Plaintiff,　　　　　　　\*
　　　　　　　　　　　　　　\*
vs.　　　　　　　　　　　　\*　　CV 409-022
　　　　　　　　　　　　　　\*
BRITISH MARINE LUXEMBOURG, \*
S.A.,　　　　　　　　　　　\*
　　　　　　　　　　　　　　\*
　　Defendant.　　　　　　　\*

## ORDER

Plaintiff Deep Sea Financing, LLC ("Deep Sea") brought this action to recover funds as the assignee of the alleged loss payee on a marine hull insurance policy underwritten by Defendant British Marine Luxembourg, S.A. ("British Marine"). As part of the relief sought, Deep Sea requested the fifty-percent statutory penalty and reasonable attorney's fees available under O.C.G.A. § 33-4-6[1] for an insurer's bad faith refusal to pay insurance benefits after a demand has been made.

---

[1] As a preliminary matter, the Court notes that it inadvertently quoted the pre-2001 version of O.C.G.A. § 33-4-6 in its May 13, 2010 Order granting British Marine's Motion for Partial Summary Judgment. Prior to 2001, § 33-4-6 only imposed a penalty of up to twenty-five percent for an insurer's bad faith refusal to pay insurance benefits in the event of a loss covered by a policy of insurance. O.C.G.A. § 33-4-6 (2000). The statute now permits a penalty of up to a fifty-percent. The Court's mistake regarding the specific penalty available under § 33-4-6, however, had no effect on the analysis in its May 13, 2010 Order.

AO 72A
(Rev. 8/82)

On May 5, 2009, British Marine moved for partial summary judgment on Deep Sea's bad faith claim. (Dkt. No. 30.) British Marine argued that the choice-of-law clause in the marine hull insurance policy at issue – which provides that the "policy shall be governed by and construed in accordance with Mexican law" (Dkt. No. 30 Ex. A) – precludes Deep Sea from asserting a statutory bad faith claim under Georgia law. After carefully considering the extensive briefing and evidence submitted by the Parties, the Court granted British Marine's motion by Order dated May 13, 2010. (Dkt. No. 123.) Deep Sea now moves this Court to reconsider that Order. (Dkt. No. 128.) For the reasons set forth below, Deep Sea's Motion for Reconsideration is **DENIED**. (Dkt. No. 128.)

The facts underlying this dispute are set forth in complete detail in the Order granting British Marine's motion for partial summary judgment. (See Dkt. No. 123.) To summarize, British Marine agreed to underwrite a policy of marine hull insurance covering a dredge and other associated equipment owned and operated by Dragados Mundiales del Caribe S.A. de C.V. ("Dragados"). During the policy period, the dredge ran aground on an environmentally sensitive reef while en route to Puerto Cancun, Mexico. The grounding of the dredge gave rise to multiple claims under the hull insurance policy, and British Marine honored many of those claims by making payments directly

AO 72A
(Rev. 8/82)

to Dragados and third parties involved in salvaging the dredge. Deep Sea subsequently sent notice to British Marine demanding any payments due under the policy. Deep Sea claimed that it purchased its right to the payments from a purported loss payee on the policy. British Marine did not respond to Deep Sea's demand. The insurer denies that there was ever any loss payee listed on the policy.

Deep Sea's claim to the funds due under the policy spawned two separate actions. In December of 2008, Deep Sea filed this civil action in the Superior Court of Chatham County, Georgia claiming entitlement to all payments due under the marine hull insurance policy. British Marine subsequently removed the lawsuit to this Court. (Dkt. No. 1.) On the same day it filed its removal notice, British Marine also filed an interpleader action naming Deep Sea and Dragados as defendants. (See CV 409-023.) The two cases were eventually consolidated for pretrial purposes in June of 2009.

As part of the relief sought in the case sub judice, Deep Sea alleges that British Marine's refusal to answer its demand for payment amounts to bad faith, and that Deep Sea is therefore entitled to the statutory penalty and attorney's fees available under O.C.G.A. § 33-4-6. British Marine moved for partial summary judgment on Deep Sea's § 33-4-6 claim and the Court granted its motion. Deep Sea now moves this Court to reconsider

and clarify its May 13, 2010 Order granting British Marine's Motion for Partial Summary Judgment.

The decision to grant a motion for reconsideration is committed to the sound discretion of the Court. Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000). A motion for reconsideration should not be used as a vehicle "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003). Nor do such motions present an opportunity to instruct the Court on how it "'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

Most of the arguments raised in Deep Sea's motion for reconsideration simply restate arguments that the Court already addressed in its May 13, 2010 Order. Three of Deep Sea's arguments, however, merit further discussion as set forth below.

1. *Deep Sea's Statutory Argument*

In its initial response to British Marine's motion for partial summary judgment, Deep Sea argued that "[t]he specific language in the [policy's] choice of law provision, 'This policy shall be governed by and construed in accordance with Mexican

law,' does not as a matter of law address a direct statutory cause of action in the case of O.C.G.A. § 33-4-6." (Dkt. No. 34.) In its May 13, 2010 Order, the Court dismissed Deep Sea's contention that a statutory cause of action under § 33-4-6 is still available notwithstanding the contractual choice-of-law provision by reasoning that "if the marine insurance policy is to be governed by the laws of Mexico, it is difficult to see how Deep Sea's choice of forum 'would enable the Georgia Legislature to add to the contract the penal consequences set forth in [O.C.G.A. § 33-4-6]." (Dkt. No. 123 p. 16 (quoting Coffin v. London & Edinburgh Ins. Co., 27 F.2d 616, 618 (D. Ga. 1928).) Deep Sea now asks the Court to reconsider this analysis, alleging that the Court failed to "constru[e] the choice-of-law provision in issue" in its previous Order. (Pl.'s Mot. Recons. ¶ 7.)

The choice-of-law clause in the marine hull insurance policy at issue specifies that the "policy shall be governed by and construed in accordance with Mexican law." (Dkt. No. 30 Ex. A.) Deep Sea argues that in Young v. W.S. Badcock Corp., 222 Ga. App. 218, 474 S.E.2d 87 (1996), the Georgia Court of Appeals held that language stating that a contract is to be "governed by and construed in accordance with" a foreign jurisdiction's laws does not preclude a party to that contract from asserting a statutory claim under Georgia law. Thus, according to Deep Sea,

the Court erred in holding that Deep Sea's statutory claim under § 33-4-6 is unavailable merely because the policy specifies that the contract will be governed by Mexican law.

Deep Sea misstates the Young court's holding. In that case, the court held that the parties' agreement that their contractual duties would be "governed by and construed in accordance with the laws of the State of Florida" was not applicable in determining whether the plaintiffs had set forth a valid tort claim under Georgia law. Id. at 218. The Young court reasoned that the choice-of-law provision did not state that "any and all claims arising out of the relationship between the parties shall be governed by Florida law," but only those claims arising out of the parties' contractual duties. Id. The court therefore concluded that the plaintiffs' Georgia-law fraud claim, which was "*ex delicto* rather than *ex contractu*," was not precluded by application of the choice-of-law provision at issue. Id.

Here, unlike the plaintiffs' fraud claim in Young, Deep Sea's claim under O.C.G.A. § 33-4-6 arises solely out of the alleged contractual relationship between the parties to this action. Under Georgia law, an insurer's bad faith refusal to pay an insurance claim amounts to no more than a breach of contract. Globe Life & Accident Ins. Co. v. Ogden, 182 Ga. App. 803, 804, 357 S.E.2d 276 (1987); see also Cordell v. Pac.

AO 72A
(Rev. 8/82)

Indem., No. 4:05CV167, 2006 WL 1935644, at *3 (N.D. Ga. July 11, 2006). Section 33-4-6 simply provides a fixed penalty for that breach; it does not create a separate tort that can be maintained independently of a plaintiff's contractual claim. Globe Life, 182 Ga. App. at 804,; see also Leonard v. Fireman's Ins. Co., 100 Ga. App. 434, 435, 111 S.E.2d 773 (1959) ("[I]f there is no liability except that arising out of a breach of a purely contractual duty, the action must be in contract, and an action in tort can not [sic] be maintained."). Because Deep Sea's bad faith claim arises out of the contractual duties contemplated by the policy at issue, an agreement that the policy "shall be governed by and construed in accordance with the laws of Mexico" precludes relief pursuant to Georgia's statutory remedy for an insurer's bad faith refusal to perform its contractual obligations promptly. As the Court stated in its previous Order, that statutory remedy is not available simply because Deep Sea brought its action for breach in a Georgia forum. See Coffin, 27 F.2d at 618 (citing Georgia's prior bad faith refusal statute, Park's Code, Sec. 4549).

*1. Deep Sea's Mutual Mistake Argument*

Deep Sea first raised its contention that the choice-of-law provision in the policy at issue is the product of mutual mistake in the companion case in a brief filed in opposition to Dragados's motion to dismiss British Marine's interpleader

7

action. (See CV 409-023, Dkt. Nos. 61 & 68.) Dragados moved to dismiss the interpleader action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure,[2] arguing that the policy at issue contains a forum selection clause evincing the contracting parties' agreement "to submit to the exclusive jurisdiction of the Courts of Mexico." (Dkt. No. 30 Ex. A.) Deep Sea countered by arguing that the forum selection clause was left in the policy by mistake. Although Dragados's motion to dismiss was ultimately denied on other grounds (See CV 409-023, Dkt. No. 121), the specter of Deep Sea's mutual mistake argument remained, seeping over into the Parties' numerous supplemental filings in the case sub judice. (See Dkt. Nos. 67, 73, 74, 76, 78, & 79.)

Deep Sea alleges that both Dragados and British Marine initially labored under the mistaken assumption that British Marine would be unable to cover Dragados's dredge under a contract of direct insurance, and would instead be required to provide reinsurance through a Mexican primary insurer. According to Deep Sea, this arrangement would have necessitated inclusion of Mexican choice-of-law and jurisdiction clauses in any marine hull insurance policy underwritten by British Marine.

---

[2] Dragados actually moved to dismiss the interpleader action pursuant to Rule 12(b)(1), but the Court converted the motion since the appropriate procedural vehicle for a motion to dismiss on the basis of a forum selection clause is a Rule 12(b)(3) motion to dismiss for improper venue. Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289 (11th Cir. 1998).

8

Deep Sea further alleges that although Dragados and British Marine eventually determined that a Mexican primary insurer would not be required, British Marine inadvertently failed to exclude the Mexican choice-of-law and jurisdiction provisions from the parties' final agreement. Deep Sea now seeks reformation of the policy on the basis of British Marine's alleged oversight.

Deep Sea and British Marine agree that "to establish mutual mistake, a party must prove that *both* parties to the agreement intended something other than that which was memorialized." Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venez., 991 F.2d 42, 47 (2d Cir. 1993) (citing Investors Ins. Co. of Am. v. Dorinco Reinsurance Co., 917 F.2d 100, 105 (2d Cir. 1990)). As evidence that neither British Marine nor Dragados intended to include the Mexican choice-of-law and jurisdiction clauses in the policy, Deep Sea offers the affidavit of John Demere, a former Dragados partner and the sole member of Deep Sea. In that affidavit, Demere avers that:

> Mr. Brennan [the producing broker] initially advised that British Marine said Mexican insurance would be required because the dredge was to be placed under Mexican flag. It was then British Marine's understanding that a Mexican flag would be required. British Marine's initial rate quotation included a 10 percent additional premium if the dredge was flagged in Mexico because a Mexican insurance company (charging a 10 percent fee) would have to actually issue the policy on behalf of British Marine, and British Marine's policy would have to be governed by

9

> Mexican law and Courts. The dredge did not in fact have to change flag and British Marine informed us that a Mexican insurance policy was not required. However, British Marine mistakenly failed to remove the Mexican forum and choice of law provisions by accident. *No one ever intended to enter an insurance contract with a Mexican forum selection clause which required exclusive jurisdiction in a Mexican court, or a needless clause which could lead to a totally unenforceable policy in Mexico.*

(Demere Aff. ¶ 6) (emphasis added).

The conclusory statements in Demere's affidavit, however, are insufficient to create a genuine issue of material fact as to whether British Marine intended something other than what was memorialized in the policy. The Federal Rules of Civil Procedure require that affidavits opposing a motion for summary judgment[3] "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Demere's conclusory and speculative statements regarding British Marine's intentions are outside the scope of his personal knowledge. Moreover, Demere has made no showing that he would be competent to testify concerning the choice-of-law and jurisdiction terms to which British Marine assented after the contracting parties determined that the reinsurance arrangement would not be required. Accordingly, the Court

---

[3] Although Demere's affidavit was initially submitted in opposition to Dragados's motion to dismiss British Marine's interpleader action, Deep Sea now asks the Court to reexamine this evidence in light of its motion to reconsider British Marine's motion for partial summary judgment.

10

cannot consider the statements in Demere's affidavit as evidence that "*both* parties to the agreement intended something other than that which was memorialized." Progressive Cas. Ins., 991 F.2d at 47; see also Thomas v. Ala. Council on Human Relations, Inc., 248 F. Supp. 2d 1105, 1112 (M.D. Ala. 2003) ("[A]ffidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper.").

That being said, Deep Sea has not presented any credible evidence supporting its contention that the Mexican choice-of-law and jurisdiction clauses were included in the policy as a result of the contracting parties' mutual mistake. Deep Sea maintains that the affidavit and deposition testimony of British Marine's Claims Director and a former hull underwriter provide evidence that the insurer did not intend to include the Mexican clauses in the policy after learning that reinsurance through a Mexican primary insurer would not be required. However, nothing in these submissions indicates that British Marine believed or intended that the contracting parties' final agreement would be governed by anything other than Mexican law. Deep Sea places particular emphasis on the following exchange in British Marine's former hull underwriter's deposition:

> Q: So, I see ships passing in the night here, Mr. Lagna [the former hull underwriter]. Maybe it's a failure of communication between the two of you, but when they say we don't need [a Mexican primary

>           insurer], why didn't you say strip the Mexican
>           clauses?
>
>           . . . .
>
>           A:  I think at the time I was more concerned regarding
>           the trading area, and we were discussing that, and I
>           probably didn't pick just that out.
>
>           Q:  Overlooked it?
>
>           A:  Perhaps.
>
>           Q:  Okay.  And so really, if we could go back and
>           rewrite it - I mean, you can never turn back the
>           clock, can you, but if you could, you would say, look,
>           if you are telling me that you don't need the Mexican
>           insurance, we want our standard London clauses just
>           like what I quoted you to begin with?
>
>           A:  I would have said that, yeah.

(Lagna Dep. 102-03.)  But this testimony only proves that the underwriter neglected to inquire about the possibility of renegotiating the policy to specify English law as the instrument's governing law once he found out that the reinsurance arrangement was unnecessary.  It does not provide any evidence that British Marine believed that the contracting parties' agreement to include the Mexican choice-of-law and jurisdiction clauses no longer applied.

Deep Sea appears to conflate the contracting parties' purported one-time mutual assumption that a Mexican primary insurer would be required with the parties' agreement that the policy would be governed by Mexican law.  But evidence that the contracting parties ultimately determined that a reinsurance

12

AO 72A
(Rev. 8/82)

arrangement was unnecessary is not *ipso facto* evidence that British Marine thereafter intended the parties' final agreement to be governed by something other than Mexican law, yet inadvertently failed to remove the Mexican choice-of-law and jurisdiction provisions. Indeed, the evidence suggests that British Marine did not view the inclusion of the Mexican choice-of-law and jurisdiction clauses as being dependent on a possible reinsurance arrangement. As British Marine's Claims Director reasoned in his affidavit:

> [i]t may have been the case that [Dragados] and its advisors, including the Placing Broker, had concluded that cover for Mexican-flagged vessels, operating within Mexican territorial waters, was required to be on terms that the Contract of Insurance was governed by Mexican law, and subject to the jurisdiction of Mexican Courts, even if it was not placed with a Mexican insurer.

(Menear Aff. ¶ 75.) And when asked at his deposition why the Mexican choice-of-law provision was included in the policy, British Marine's former hull underwriter ultimately responded that "the clause has been left in there because [Dragados is] a Mexican-owned operation." (Lagna Dep. 92-95.) This testimony also comports with the deposition testimony of Chuck Newlin, Demere's former Dragados business partner. Newlin deposed that the Mexican choice-of-law and jurisdiction clauses were included in the policy because Dragados wanted "everything to be able to be done in Mexico. It was a Mexican corporation, and we felt

13

like that - we felt like there were certain advantages to that over submitting to some British arbitration, which they [the insurer] - which they request, I think, normally." (Newlin Dep. 95.)

Because Deep Sea has not presented any credible evidence that British Marine intended the policy to be governed by something other than Mexican law, Deep Sea has not shown that "*both* parties to the agreement intended something other than that which was memorialized." Progressive Cas. Ins., 991 F.2d at 47. Accordingly, the Court finds no evidence of mutual mistake that would necessitate reconsideration of the Court's May 13, 2010 Order granting British Marine's Motion for Partial Summary Judgment.

*2. Request for Clarification*

Given the Court's prior holding that the Mexican choice-of-law clause in the policy at issue is reasonable and enforceable, Deep Sea asks this Court to clarify its ruling concerning the remedy available under Mexican law. In its previous Order, this Court determined - based on a translation of the relevant Mexican law by Deep Sea's own expert - that "[t]o the extent that any insurer undertakes to cover the risks of an insured contracting in good faith, . . . the law of Mexico enforces that obligation on behalf of the insured and its beneficiaries." (Dkt. No. 123 p. 12.) Deep Sea argues that "[w]hile the

AO 72A
(Rev. 8/82)

statutory language quoted and relied upon by the Court might theoretically provide some right to an insured, there is no Mexican statutory vehicle by which Deep Sea could enforce the right." (Pl.'s Mot. Recons. ¶ 2.) Deep Sea therefore asks this Court to clarify "the nature and quality of the right to be enforced as well as the statutory process by which enforcement will occur." (Id. ¶ 3.)

The nature and quality of the right to be enforced is clear: an insured contracting in good faith has a *contractual* right to enforce an insurer's obligation to cover a loss insured under a policy of insurance. See Ley General de Instituciones y Sociedades Mutualistas de Seguros [LGISMS] [Insurance Law], as amended, art. 4, Diario Oficial de la Federación [DO], 28 de Junio de 2008 (Mex.) ("[C]ontracts entered into in violation of the provisions of this article have no legal effect . . . independent of the responsibilities which the person or entity in question may incur before the good faith contracting party. . . ."[4]). That contractual right extends to the insured's beneficiaries and claimants. Id. As a claimant of the insured, a loss payee may therefore enforce the insured's rights under the policy, as may an assignee of the loss payee. See Ley Sobre el Contrato de Seguro [LSCS] [Law of Insurance Contracts], art. 109, Diario Oficial de la Federación [DO], 2 de Enero de 2002;

---

[4] This English translation of the relevant LGISMS provision is that of Deep Sea's expert, Lic. Marciano F. de J. Herrera y Aguilar.

15

see also Expert Witness Report of Carlos Rafeal Murillo Rivas, Dkt. No. 124 p. 11-14. Thus, no statutory vehicle or process is required for the valid assignee of a loss payee to enforce its rights under an insurance policy. Rather, "to the extent the [insured's] obligation was incurred in good faith and to the extent [the assignee] can show a valid assignment of [the] alleged loss payee rights under the policy," the Court will enforce those rights as it would any other contractual right. (Dkt. No. 123 p. 12.)

A court will find a choice-of-law provision unreasonable, and therefore unenforceable, when "the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy." Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1296 (11th Cir. 1998). However, a court will not invalidate a choice-of-law clause "simply because the remedies available in the contractually chosen forum are less favorable than those" that might otherwise be available to the plaintiff. Id. at 1297. After much careful consideration, this Court already determined that the application of Mexican law would not deprive Deep Sea of a remedy. (Dkt. No. 123 p. 12-13.) Mexico may not have a statutory provision equivalent to Georgia's O.C.G.A. § 33-4-6, but Mexican law would require British Marine to fulfill any contractual obligations it might owe Deep Sea pursuant to the policy. A contractual remedy is therefore available under

16

Mexican law; whether Deep Sea can prove that it has a right to this remedy remains to be seen.

For all of the reasons set forth above, Deep Sea's Motion for Reconsideration (Dkt. No. 128) is hereby **DENIED**.

**SO ORDERED**, this 1st day of September, 2010.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)

17